In re LORENZO BANCSHARES, INC., Debtor.

Craig McDONALD, Mickey McDonald, and Lola Craig McDonald, Plaintiffs,

v.

LORENZO BANCSHARES, INC., Defendant.

Bankruptcy No. 590–50274–11.
Adv. No. 590–5032.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Jan. 2, 1991.

Kevin Williams, Baker, Clifford, Krier & Webb, Lubbock, Tex., for plaintiffs.

Don Graf, McCleskey, Harriger, Brazill & Graf, and R. Byrn Bass, Jr., Harding, Bass, Fargason & Booth, Lubbock, Tex., for debtor/defendant.

## MEMORANDUM OF OPINION ON ATTORNEY'S FEES

JOHN C. AKARD, Bankruptcy Judge.

The court determines that under Texas statutes the Plaintiffs are entitled to attorney's fees and therefore awards pre-petition attorney's fees as a part of the Plaintiffs' claim and post-petition attorney's fees prior to any distribution or retention of property by the shareholders.

### Facts

Following the death of the longtime president of Lorenzo State Bank of Lorenzo, Texas (Bank) a group of investors formed Lorenzo Bancshares, Inc. (Bancshares) to acquire the Bank. Bancshares acquired all of the outstanding stock of the Bank in 1981 in exchange for cash, stock in Bancshares and subordinated debentures issued by Bancshares. The cash was obtained through a loan from MBank Dallas, N.A. which was secured by a pledge of all of the outstanding Bank stock.[1] It was anticipated that the Bank would generate sufficient dividends to Bancshares to enable Bancshares to meet its obligations on the note to MBank and to the holders of the subordinated debentures. For a time the Bank was able to do so. However, in late 1986, after an examination by regulatory authorities, the officers and directors of the Bank (who were basically the same as the officers and directors of Bancshares) began to consider ways to reduce the drain on the Bank caused by the large dividend payments. On April 14, 1987, Bancshares made a formal tender offer to the holders of the subordinated debentures to exchange their debentures for stock in Bancshares. The tender offer expired on May 12, 1987 but, as permitted in the offering document, the board of directors extended the offer to May 31, 1987. Over 90% of the outstanding debentures were tendered. The offering documents gave the board of directors the right to refuse to accept any of the tendered debentures if less than 100% were tendered. The board decided not to exercise that option. Instead it accepted the tendered debentures in exchange for stock.

Craig McDonald, Mickey McDonald and Lola Craig McDonald (the Plaintiffs in this Adversary Proceeding) did not tender their debentures to be exchanged for stock. They own a majority of the outstanding debentures. They also own stock in Bancshares. During the extension period an officer of the Bank solicited Mr. Mickey McDonald to accept the exchange. Mr. McDonald indicated that the Plaintiffs were not going to exchange. There was no further contact between the officers and directors of Bancshares and the Plaintiffs concerning the debentures until they received a letter dated January 7, 1988, from Mr. D.L. Peterson, President of both the Bank and Bancshares, advising them that the board of directors of Bancshares decided not to pay the annual interest on the debentures due on December 31, 1987.

1. Bank One Texas, Inc., is now the holder of the note and liens.

In the spring of 1988 the attorneys for the Plaintiffs made informal attempts to collect the delinquent interest. These attempts proved unsuccessful. The Plaintiffs accelerated the debentures and made demand for payment. When payment was not received the Plaintiffs filed suit against Bancshares in the 72nd District Court of Crosby County, Texas. Bancshares filed a cross action alleging that the Plaintiffs and Bancshares had an oral agreement calling for the Plaintiffs to tender their debentures. Bancshares also alleged that statements made by one or more of the Plaintiffs induced other debenture holders to surrender their debentures. No other debenture holders were made parties to the action. Depositions were taken and the matter was set for trial when, on May 21, 1990, Bancshares filed for relief under Chapter 11 of the Bankruptcy Code.[2] Because of the bankruptcy, the state court suit did not go to trial and Bancshares removed the matter to the bankruptcy court.

After a two day trial, the bankruptcy court determined that Plaintiffs were entitled to judgment and that there was no substance to Bancshares' cross action. The court found that the Plaintiffs were entitled to attorney's fees under Tex.Civ. Prac. & Rem.Code Ann. § 38.001 (Vernon 1986). *See also, In re Continental Airlines Corp.*, 110 B.R. 276 (Bankr.S.D.Tex. 1989). The court requested the Plaintiffs' attorney to file an application for attorney's fees in the usual bankruptcy format.

The Plaintiffs requested attorney's fees and expenses totaling $20,951.33.

In its response to the application, Bancshares asserted that some of the services for which fees were requested did not relate to the Adversary Proceeding but were for general representation in the bankruptcy proceeding. Bancshares also asserted that the Plaintiffs were not entitled to attorney's fees subsequent to the May 21, 1990 filing of the bankruptcy petition because the Plaintiffs are unsecured creditors and § 506 of the Bankruptcy Code provides that only oversecured creditors are entitled to reimbursement for attorney's fees. Additionally, while Bancshares asserted "that in certain instances there is unnecessary duplication of work" by the Plaintiffs' attorneys, it failed to identify the dates and charges to which it objected.

### Discussion

Baker, Clifford, Krier & Webb initiated services to the Plaintiffs in this matter on February 5, 1988. Fees and expenses totaled $13,503.83 for services rendered from February 5, 1988 through May 18, 1990 (the last date upon which services were rendered prior to the filing of the bankruptcy). A review of the request indicates that the fees and expenses were reasonable and necessary.

Fees and expenses for services rendered from May 21, 1990 through October 24, 1990 total $7,447.50. A review of the records indicates that the following services were not related to the trial of this Adversary Proceeding.

| Date | Service | Amount |
|---|---|---|
| May 24, 1990 | Dictation and preparation of proofs of claim in bankruptcy | $ 187.50 |
| July 9, 1990 | Work on proofs of claim | 215.00 |
| July 11, 1990 | Conference with client and attendance at creditors' meeting | 218.75 |
| September 20, 1990 | Brief review of disclosure statement and brief review of proposed plan | 162.50 |
| October 4, 1990 | Receipt and review of motion to hire financial consultant; research sec. 503 of Bankruptcy Code and dictation, preparation and filing of response | 187.50 |
| October 19, 1990 | Dictation and preparation of objections to plan | 187.50 |
| | TOTAL | $1,158.75 |

---

**2.** The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code.

The remaining $6,288.75 post-petition fees and expenses are related to the Adversary Proceeding and the court finds that they were reasonable and necessary.

The court must now consider whether attorney's fees for post-petition services in connection with this Adversary Proceeding should be allowed. Where the value of the collateral exceeds the amount of a secured creditor's claim, under § 506 a secured creditor is allowed post-petition interest, expenses and attorney's fees up to the value of the collateral. The Code contains no corresponding provision allowing attorney's fees for unsecured creditors. However, the prior judge of this court allowed contractual attorney's fees to unsecured creditors in a reorganization proceeding involving a non-profit corporation. *In re Missionary Baptist Foundation of America, Inc.,* 24 B.R. 970 (Bankr.N.D.Tex.1982, Brister J.)

Additionally, in his well-reasoned *Continental* opinion, *supra,* Judge Wheless analogized post-petition attorney's fees allowed under Tex.Civ.Prac. & Rem.Code Ann. § 38.001 to post-petition interest and concluded:

> [A]t least as an issue of policy, as in the case of interest, creditors should be entitled to the recovery of attorney fees in instances where the Debtor is solvent and they would be entitled to attorney fees under state law for litigation over the validity and amount of their claim but for the filing of the bankruptcy case.
>
> This Court would make a distinction where services are rendered on behalf of a creditor in the monitoring of the case as opposed to services rendered in connection with the contest over the claim itself....
>
> This Court finds no logical reason to prohibit the allowance of attorney's fees for professional services rendered in successfully establishing a disputed unsecured claim when the Debtor is solvent. 110 B.R. at 280.

The subordinated debentures held by the Plaintiffs stated: "The repayment of this Debenture shall be subordinate to repayment of all secured and unsecured debts of Company." Thus, payment of these debentures comes immediately ahead of any payment to or retention of property by the shareholders. Equity demands that the Plaintiffs receive the attorney's fees to which they are entitled under Texas law before any distribution is made to or any property is retained by the shareholders in this Chapter 11 proceeding.

## CONCLUSION

Because the Plaintiffs are entitled to attorney's fees under the Texas statutes, the court awards the Plaintiffs attorney's fees in the amount of $13,503.83 for pre-petition fees and expenses and the sum of $6,288.75 for post-petition fees and expenses for a total of $19,792.58 in addition to the approximately $232,000.00 owed to the Plaintiffs on the debentures. The Plaintiffs are awarded an additional $5,000.00 in attorney's fees and expenses if this matter is appealed to the United States District Court and an additional $5,000.00 attorney's fees and expenses if the matter is appealed to the United States Court of Appeals for the Fifth Circuit.

JUDGMENT ACCORDINGLY.