# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

### 99-6075EM

---

| | |
|---|---|
| In re:  Stewart D. Waterman | * |
| | * |
| Debtor. | * |
| | * |
| Stewart D. Waterman | * |
| | * |
| Debtor - Appellant | *  Appeal from the United States |
| | *  Bankruptcy Court for the |
| | *  Eastern District of Missouri |
| Lela F. Ditto, Trustee Under Self | * |
| Declaration of Trust Dated | * |
| March 20, 1989, as Amended | * |
| | * |
| Objector - Appellee | * |

---

Submitted: May 4, 2000
Filed: May 24, 2000

---

Before KOGER, Chief Judge, KRESSEL AND WILLIAM A. HILL, Bankruptcy Judges

---

KOGER, Chief Judge

Debtor Stewart D. Waterman appeals the Order of the Bankruptcy Court,[1] allowing a claim filed by Lela F. Ditto.  For the reasons that follow, we affirm the Order of the Bankruptcy Court.

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(b) and (c).

---

[1] The Honorable Barry S. Schermer, United States Bankruptcy Judge for the Eastern District of Missouri.

FACTUAL BACKGROUND

Lela F. Ditto filed a Proof of Claim asserting a secured claim in the amount of $28,955.40 pertaining to a Promissory Note and Deed of Trust which had been executed between Ditto and Debtor in the earlier Chapter 11 bankruptcy case of AABase Homes, Inc. The bankruptcy judge in the AABase Homes case had approved a Settlement Agreement between Debtor, Ditto, and the trustee in the AABase Homes case under which Debtor agreed to the terms of a Promissory Note Secured By Deed of Trust dated August 31, 1998, and an Amended Deed of Trust dated October 9, 1998, regarding certain real estate owned by Debtor in St. Louis. The Promissory Note required Debtor to pay $306.33 per month with payments due on the last day of each month starting on September 30, 1998, and ending August 31, 2008.

After Debtor failed to make the payments due for November and December, 1998, Ditto sent Debtor a Notice of Default dated January 7, 1999, advising Debtor that he had failed to make the November and December payments in the amount of $306.33 each. The Notice also indicated that in addition to late charges and additional interest, Debtor was now obligated under the terms of the Settlement Agreement to pay the attorneys fees that Ditto had incurred in obtaining that Settlement Agreement in the AABase Homes bankruptcy case. Ditto demanded $4,666.56 for those attorneys fees.

After receiving the Notice of Default, Debtor made the November and December payments on January 14, 1999, but he did not pay the late fees or interest, nor did he pay the requested attorneys' fees. Debtor then continued to make monthly payments in the amount of $306.33 thereafter, although he continued to make at least some of the payments in an untimely fashion. Meanwhile, starting in January of 1999, Ditto began efforts to foreclose on the property due to Debtor's uncured defaults as demanded in the January 7 Notice of Default.

As a result of the threatened foreclosure, Debtor filed his Chapter 13 bankruptcy petition on April 12, 1999. Ditto filed a Proof of Claim asserting $21,113.14 due under the Promissory Note itself, $346.10 of which was in arrears,[2] plus $7,842.26 in attorneys' fees, all of which Ditto asserted were in arrears. The asserted attorneys' fees included both those fees incurred in obtaining the Settlement Agreement in the AABase Homes case (as demanded in the Notice of Default) and the post-default

_____

[2] Debtor had not yet made the March payment when he filed his bankruptcy petition; the sum asserted as being in arrears represented that payment plus accrued interest and penalties.

attorneys' fees incurred in connection with Ditto's efforts to collect under the Note. Ditto asserted that the entire claim, including all of the attorneys' fees, was secured under the terms of the Promissory Note, Deed of Trust, and Settlement Agreement.

Debtor objected to Ditto's Proof of Claim and the Bankruptcy Court held a hearing on the matter. On August 27, 1999, the Bankruptcy Court entered a written Order memorializing the decision he had announced orally at the hearing. Specifically, the Bankruptcy Court allowed the entire claim, including the attorneys' fees, and determined that Ditto had a secured claim for the attorneys' fees relating to the collection efforts after Debtor's default in the amount of $3,108.37, but that the claim for attorneys' fees relating to the procurement of the Settlement Agreement prior to the default in the amount of $4,733.89 was unsecured. The Court ordered that the secured portion of the attorneys' fees be treated as an arrearage and paid with the one overdue payment over thirty months at 11.25% interest and directed Debtor to file an amended Chapter 13 plan conforming to the Order. Debtor filed a motion to set aside the Order which the Bankruptcy Court denied. Debtor appeals.

Standard of Review

We review findings of fact for clear error and legal conclusions *de novo*. See O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997); Hartford Cas. Ins. Co. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 214 B.R. 197, 199 (B.A.P. 8th Cir. 1997); see also Fed. R. Bankr. P. 8013. When we review the Bankruptcy Court's determination of a fact question based on the construction of documentary evidence, we are to apply a clearly erroneous standard of review. See Allis-Chalmers Credit Corp. v. Tri-State Equip., Inc. (In re Tri-State Equip., Inc.), 792 F.2d 967, 970 (10th Cir. 1986) (citing Anderson v. Bessemer City, 470 U.S. 564, 105 S. Ct. 1504, 1512, 84 L. Ed. 2d 518 (1985)). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. at 573, 105 S. Ct. at 1511, 84 L. Ed. 2d 518 (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S. Ct. 525, 542, 92 L. Ed.746 (1948)); accord In re Waugh, 95 F.3d 706, 711 (8th Cir. 1996); Chamberlain v. Kula (In re Kula), 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997).

3

<u>Admissibility of Evidence</u>

Debtor asserts that the documentary evidence upon which the Bankruptcy Court's decision was based was not properly admitted into evidence at the hearing. There are at least three reasons why this argument must fail.

First, the documentary evidence was attached to the Amended Proof of Claim filed in the Bankruptcy Court. Federal Rule of Bankruptcy Procedure 3001 requires that when a proof of claim is based on a writing, the documents must be filed with the proof of claim. <u>See</u> Fed. R. Bankr. P. 3001(c). If a security interest in property of the debtor is claimed, the claim must be accompanied by evidence that the security interest has been perfected. <u>See</u> Fed. R. Bankr. P. 3001(d). Furthermore, a proof of claim executed and filed in accordance with the rules "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f); <u>see</u> <u>also</u> <u>Brown v. I.R.S. (In re Brown)</u>, 82 F.3d 801, 805 (8th Cir. 1996). In fact, a formal proof of claim is "some evidence even when it is denied." <u>First Nat'l</u> <u>Bank of Fayetteville v. Circle J. Dairy (In re Circle J. Dairy)</u>, 112 B.R. 297, 299 (W.D. Ark. 1989) (<u>quoting</u> <u>Whitney v. Dresser</u>, 200 U.S. 532, 536, 26 S. Ct. 316, 317, 50 L. Ed.584 (1905)). "The purpose of the rule [Rule 3001(c)] is to allow a creditor who attaches documents to his proof of claim to then refrain from presenting any other evidence because the documents establish sufficient evidence to sustain the claim." <u>Ashford v. Consolidated Pioneer Mtg. (In re Consolidated Pioneer Mtg.)</u>, 178 B.R. 222, 226 (B.A.P. 9th Cir. 1995) (citation omitted). Consequently, since the evidence to which Debtor objects was attached to Ditto's Proof of Claim, we question whether it was necessary for the documentary evidence to be formally admitted into evidence at the hearing in the first place.

Second, it was obvious that the Bankruptcy Court was relying on the documentary evidence in making its ruling at the hearing. The Court even quoted from a paragraph pertaining to attorneys' fees from the Settlement Agreement at the hearing and specifically found that Ditto's attorney's itemized fee statements which had been attached to the Proof of Claim were appropriate and supported the amount of fees she was requesting. Nevertheless, Debtor never objected to the admissibility of the evidence at the hearing, even as the Court announced its decision which was based on that evidence. As a result, even assuming Debtor had a valid objection to the admissibility of the documentary evidence, any such argument was waived. <u>See</u> <u>First Bank Investors' Trust v. Tarkio College</u>, 129 F.3d 471, 477 (8th Cir. 1997) ("As a general rule, we will not consider issues not presented to the bankruptcy court in the first instance . . . [unless] the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case . . . or where manifest injustice might otherwise result") (citations omitted).

4

Finally, Debtor raises this point for the first time on appeal in his Reply Brief. Although he couches it in terms of objecting to Ditto's recitation of the facts in her Brief, the issue of admissibility of the evidence was present from the beginning. As a result, the issue of admissibility of the documentary evidence is waived on that ground as well. See U. S. v. Applied Pharmacy Consultants, Inc., 182 F.3d 603, 609 (8th Cir. 1999) (appellate court need not address an issue raised for the first time in appellants' reply brief); Blagg v. Miller (In re Blagg), 223 B.R. 795, 808 (B.A.P. 10th Cir. 1998) (since the appellants failed to raise an issue in their opening brief, they waived the point).

### Debtor's Objection to Ditto's Proof of Claim

Debtor asserts several errors pertaining to the Court's Order allowing the claim.

> A proof of claim which comports with the requirements of Bankruptcy Rule 3001(f) constitutes prima facie evidence of the validity and amount of the claim. The interposition on an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence. Once the [debtor] manages the initial burden of producing substantial evidence, however, the ultimate risk of nonpersuasion as to the allowability of the claim resides with the party asserting the claim.

In re Brown, 82 F.3d at 805 (citations omitted); see also In re Consumers Realty & Dev. Co., 238 B.R. 418, 422 (B.A.P. 8th Cir. 1999). "The presumption of the validity of the proof of claim is a procedural device that places the burden of producing evidence to rebut the presumption on the debtors." Id.

In this case, Ditto filed a proper Proof of Claim and attached the supporting documentation as required by Rule 3001(c) and (d), so under Rule 3001(f), the Proof of Claim was prima facie evidence of the validity and amount of her claim. That being the case, Debtor was required to provide substantive evidence rebutting the claim.

At the hearing, Debtor did not produce any evidence to rebut the claim; rather, he argued, apparently based on Ditto's evidence, that since he had made all of the payments except for the March 31 payment, there was no default for the period of January through March.

Even if Debtor satisfied the requirement that he produce substantive evidence to rebut Ditto's claim, Debtor's premise that he was not in default of the terms of the Note and Agreement until April 1999, and hence the Bankruptcy Court erred in allowing any attorneys' fees which were incurred prior to April 1999,

is not supported by the evidence. To the contrary, the evidence shows that Debtor was in default at least by January 7, 1999, when Ditto sent him the Notice of Default due to his failure to make the November and December payments. At that point in time, Ditto demanded additional sums to which she was entitled under the terms of the Settlement Agreement. Among those additional sums, Ditto demanded reimbursement for the attorneys' fees she had incurred in obtaining the Settlement Agreement with him in the AABase Homes bankruptcy case. This demand for attorneys' fees was based on a provision in the Settlement Agreement which provided:

> Plaintiff and Defendant acknowledge that the Deed of Trust allows the lender to collect all expenses incurred in pursuing the remedies provided under the Deed of Trust, including, but not limited to, reasonable attorneys' fees and costs of title evidence. Plaintiff and Defendant agree to pay their own attorneys' fees associated with this matter. However, *if Defendant defaults his obligations under this Settlement Agreement and the related Deed of Trust, as amended, and Promissory Note secured by Deed of Trust, Plaintiff reserves the right to collect all of her attorneys' fees expended in this matter.*

(Emphasis added.) As the Bankruptcy Court found at the hearing, this provision plainly provides that Ditto was entitled to her attorneys' fees in connection with the Settlement Agreement in the AABase Homes case in the event Debtor defaulted on his obligations thereunder. When Ditto sent Debtor the Notice of Default demanding those attorneys' fees, Debtor was then obligated to pay them in order to fully cure his default. Since he did not do so, he remained in default of the terms of the Agreement from that point forward.[3]

As a result, we conclude that the Bankruptcy Court in this case did not clearly err in finding that under the plain terms of the Settlement Agreement, Ditto became entitled to these attorneys' fees upon Debtor's default for failure to make the November and December payments. Furthermore, by failing to pay these attorneys' fees as demanded in the Notice of Default, Debtor never fully cured the defaults.

---

[3] Debtor asserted at the hearing that this provision in the Settlement Agreement was unconscionable and suggested that the Bankruptcy Court so find. However, as the Bankruptcy Court correctly pointed out, the Settlement Agreement was approved by another bankruptcy judge in the AABase Homes case and it would not have been proper for the judge in this case to question the appropriateness of an agreement approved by another judge. Likewise, the appropriateness of the bankruptcy judge's approval of the Settlement Agreement in the AABase Homes case is not before us in this case.

Consequently, we conclude that the Bankruptcy Court did not clearly err in allowing the fees Ditto incurred in procuring the Settlement Agreement.

Debtor's next argument is likewise based on the assertion that he was not in default after he tendered the two late payments on January 14. Debtor asserts the Bankruptcy Court clearly erred in allowing the secured claim for $3,108.37 in attorneys' fees which were incurred in attempting to collect the debt because Ditto failed to present evidence that Debtor was in default under the terms of the Note between January 14 and April 23, 1999, the period for which Ditto sought these fees. As we have discussed above, contrary to Debtor's argument that he was not in default until April, the evidence supports the finding that Debtor was in default as of January 7 and that he never fully cured that default.

Ditto's claim for the post-default attorneys' fees incurred in attempting to collect the debt was based on a provision in the Amended Deed of Trust which read:

> Protection of Lender's Rights in the Property. If Borrower fails to perform the covenants and agreements contained in the Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation, or forfeiture or to enforce laws of regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.
>
> Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

Again, this documentary evidence supports the finding that since Debtor was in default as of January, Ditto was entitled to any attorneys' fees she incurred in attempting to collect the debt. Therefore, we believe the Bankruptcy Court did not err in allowing those fees. Moreover, this language plainly provides that the attorneys' fees incurred in collection efforts become part of the obligation secured by the Deed of Trust. Consequently, the Bankruptcy Court did not clearly err in concluding this portion of the fees was secured.

7

Debtor next asserts that part of the post-default attorneys' fees were incurred for services rendered on April 23, 1999, which was post-petition. Debtor correctly asserts that generally, a creditor's claim is determined as of the date of the filing of the bankruptcy petition, see In re Henry, 183 B.R. 748, 750-51 (Bankr. N.D. Tex. 1995), and that amounts incurred post-petition are not usually permitted as part of the claim. On the other hand, however, if Ditto was oversecured, she is entitled under § 506(b) to reasonable fees, costs or charges provided for under the agreement with Debtor and can add post-petition attorneys' fees to her claim to the extent allowed by her agreement with Debtor and subject to court review for reasonableness. See 11 U.S.C. § 506(b); First Western Bank & Trust v. Drewes (In re Schriock Constr., Inc.), 104 F.3d 200, 201 (8th Cir. 1996). Debtor's schedules show that the real property securing Ditto's claim as having a value of $30,000. Since Ditto's secured claim was determined by the Bankruptcy Court to be $24,221.51, including the post-petition attorneys' fees, Ditto is an oversecured creditor and entitled to post-petition attorneys' fees under § 506(b).

Finally, Debtor asserts that the Bankruptcy Court clearly erred in ordering him to cure the arrearages totaling $3,454.57 (representing an arrearage of $346.10 under the Note plus the post-default attorneys' fees in the amount of $3,108.37) over a period of thirty months with interest at 11.25% and to amend his plan accordingly. Because Debtor has not yet proposed a plan which has been confirmed, nor has his case been dismissed for failure to propose a confirmable plan, we believe this issue is prematurely raised. See Lewis v. United States, 992 F.2d 767, 772 (8th Cir. 1993) (a bankruptcy order which neither confirms a plan nor dismisses the underlying petition is not final).

Conclusion

For the foregoing reasons, we conclude that the Bankruptcy Court did not clearly err in allowing Ditto's claim. The judgment is therefore affirmed.

A true copy.

Attest:

CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
EIGHTH CIRCUIT.