In re PRIDE COMPANIES, L.P., Debtor.

Pride Companies, L.P., Plaintiff,

v.

David C. Johnson, Daniel M. Belf, David D. Bonds, Michael H. Chase, and William F. Yocum, Defendants.

Bankruptcy No. 01–10041–RLJ–11. Adversary No. 01–1011.

United States Bankruptcy Court, N.D. Texas, Abilene Division.

Sept. 30, 2002.

Stephen A. McCartin, Michael Anthony Barragan, Gardere, Wynne & Sewell, Dallas, TX, for Plaintiff.

Jerry Kent Sawyer, Whitaker, Chalk, Swindle & Sawyer, Ft. Worth, TX, Sam J. Chase III, Abilene, TX, R. Byrn Bass Jr., Harding, Bass, Fargason, Booth & St. Clair, L.L.P., Lubbock, TX, Weldon L. Moore III, Creel, Sussman & Moore, Dallas, TX, for Defendants.

### *MEMORANDUM OPINION*

ROBERT L. JONES, Bankruptcy Judge.

Before the court is the First Amended Motion for Reconsideration and/or Rehearing ("Motion"), filed by David C. Johnson, Daniel M. Belf, David D. Bonds, Michael H. Chase, and William F. Yocum (collectively "Former Employees").

This court has jurisdiction of this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B)(C)(O). This Memorandum Opinion contains the court's findings of fact and conclusions of law. FED. R. BANKR. P. 7052, 9014.

### *Background*

This adversary arose as a result of proofs of claim filed by Former Employees against Pride Companies L.P. ("Pride"). Former Employees asserted a right to payment under their employment contracts and severance agreements with Pride. Specifically, Former Employees argued that their employment contracts, which provided that they receive the same bonus as other Pride executives, meant that they should have received the same amount of bonus awarded to Pride's key executives when such key executives received bonuses in 1999 and in 2000. Each Former Employee claimed approximately $1 million as his share of said bonuses.

Trial of the adversary was held November 26–27, 2001. The court's ruling was issued on December 21, 2001. The court found that Former Employees were entitled to a share of the bonuses paid by Pride in 1999 and in 2000, but not in an amount equal to that received by Pride's key executives. The court allowed counsel for Former Employees to file a motion and affidavit for attorney's fees. Additionally, the court reopened the evidence to permit the parties to present evidence of the amount of bonuses to which the Former Employees were entitled. After hearing the additional evidence, the court, on May 14, 2002, entered its memorandum opinion, holding that Former Employees were each entitled to a claim in the amount of $99,608.24, but denying their request to recover their postpetition attorney's fees. The court entered an order on its memorandum opinion on July 8, 2002. This order awarded each Former Employee a claim in the amount of $99,608.24 for unpaid bonuses, and further allowed Bonds, Chase, and Yocum claims for unpaid severance payments. The court denied all other relief requested.

Former Employees' Motion requests reconsideration and/or rehearing of the following matters: (1) the court's denial of any attorney's fees to Former Employees; (2) the court's denial of Johnson's and

Belf's claims for unpaid severance payments; and (3) the rationale employed by the court, resulting in a claim of $99,608.24 for each of the Former Employees as their share of the bonuses.

### Discussion

█ Former Employees base their motion on Bankruptcy Rules 3008 and 9023. Rule 3008 provides that "[a] party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate." FED. R. BANKR. P. 3008. Rule 9023 provides that Federal Rule of Civil Procedure 59 applies in bankruptcy cases, "except as provided in Rule 3008." FED. R. BANKR. P. 9023. The exception referred to in Rule 9023 applies to the applicable time limit in which to bring a Rule 9023 motion: there is no time limit in which to bring a Rule 3008 motion while there is a 10 day time limit in which to bring a Rule 9023 motion. *See Abraham v. Aguilar (In the Matter of Aguilar)*, 861 F.2d 873, 875 n. 2 (5th Cir.1988). The exception, therefore, means only that the 10 day time limit does not apply when the requested reconsideration involves allowing or disallowing a claim. *See id.*

█ Rule 3008 applies Bankruptcy Code section 502(j), which provides that "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j) (2002). The "for cause" referred to in section 502(j) depends on the particulars of the situation, especially on the time frame in which the Rule 3008 motion is brought. *See, e.g., Fidelity Fin. Servs. Inc. v. Montgomery County Dep't of*

*Human Res. (In re Davis)*, 237 B.R. 177, 182 (Bankr.M.D.Ala.1999). If the Rule 3008 motion is brought within the 10 day time frame referred to in Rules 9023 and 8002(a), Rule 9023 will guide the "for cause" standard. *See In the Matter of Aguilar*, 861 F.2d at 874; *United States v. Colvin*, 203 B.R. 930, 936 (N.D.Tex.1996); *In re Davis*, 237 B.R. at 182. Alternatively, if the Rule 3008 motion is brought after the expiration of the 10 day period, Rule 9024 (applying Rule 60 of the Federal Rules of Civil Procedure) will guide the "for cause" standard. *See id.*

█ Because Former Employees filed their Motion within the 10 day period after the court's July 8 order, Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59 guide the reconsideration of matters raised by Former Employees.[1] *See id.* Unlike Rule 60, which provides certain narrowly defined bases for reconsideration, Rule 59 provides that the court may provide a new trial, amend its judgment, or direct the entry of a new judgment "for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States." FED. R. CIV. P. 59(a). Similarly, section 502(j) and Rule 3008 provide the court with great discretion in reconsidering the allowance or disallowance of claims. As noted by the Fifth Circuit, "the bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary.... If reconsideration is granted, the court may readjust the claim in any fashion according to the equities of the case." *Col-*

---

**1.** This court has previously held that Bankruptcy Rule 9024 and Federal Rule of Civil Procedure 60 govern the "for cause" standard found in section 502(j) and Rule 3008. *See In re Coffman*, 271 B.R. 492, 498–99 (Bankr. N.D.Tex.2002). The court, therefore, applied the narrow dictates of Rule 60. *See id.* There is no inconsistency between that case

and the present case because, in that case, the debtor sought reconsideration well after the 10 day period provided for in Rule 59. In this case, because Former Employees brought their motion for reconsideration within the 10 day period, the more permissive Rule 59 guides the "for cause" standard.

ley v. National Bank of Tex. (In the Matter of Colley), 814 F.2d 1008, 1010 (5th Cir.1987) (internal quotation omitted). The court's decision on this matter is reviewed under the abuse of discretion standard. See id.

### Postpetition Attorney's Fees on Unsecured Claim

Former Employees ask the court to reconsider its prior denial of attorney's fees on their unsecured claims. Former Employees argue that they are entitled to attorney's fees pursuant to Sections 37.001 and 38.001 of the Texas Civil Practice and Remedies Code. Citing In re Continental Airlines Corp., 110 B.R. 276 (Bankr. S.D.Tex.1989), Former Employees further argue that a creditor is entitled to attorney's fees in bankruptcy on its unsecured claim when the debtor is solvent at all times and the creditor is otherwise entitled to attorney's fees under Texas law. Pride argues that Former Employees are not entitled to attorney's fees because: (1) they have not properly plead the issue of entitlement to attorney's fees under section 37.001; (2) they failed to properly present their claim to Pride as required by section 38.002 as a prerequisite to the recovery of section 38.001 attorney's fees; (3) in addition to failing to present their underlying claims, Former Employees did not present their claim for attorney's fees; (4) Former Employees failed to include a claim for attorney's fees on their proofs of claim; (5) no other unsecured creditor in Pride's bankruptcy has been awarded attorney's fees; and (6) Former Employees introduced no evidence to the effect that Pride was solvent at all times.

■ Former Employees may not rely on Section 37.001 of the Texas Civil Practice and Remedies Code for an award of attorney's fees from this court because such statute is procedural to Texas courts and provides no substantive right recognizable in federal court. See Utica Lloyd's of Tex. v. Mitchell, 138 F.3d 208, 210 (5th Cir.1998). Regarding Pride's argument that Former Employees failed to introduce evidence of presentment of the underlying claims as mandated by section 38.002, Former Employees' proofs of claim constituted sufficient presentment under section 38.002. See TEX. CIV. P. & REM. CODE ANN. §§ 38.004; 38.005 (Vernon 2002); Voest–Alpine Trading USA Corp. v. Bank of China, 288 F.3d 262, 268 (5th Cir.2002); Texas Nat'l Bank v. Sandia Mortgage Corp., 872 F.2d 692, 699–700 (5th Cir. 1989); International Nickel Co. Inc. v. Trammel Crow Distrib. Corp., 803 F.2d 150, 157 (5th Cir.1986); Jones v. Kelley, 614 S.W.2d 95, 100 (Tex.1981)("No particular form or manner of presentment is required"); Long Trusts v. Atlantic Richfield Co., 893 S.W.2d 686, 688 (Tex.App.— Texarkana 1995, no writ); Carrington v. Hart, 703 S.W.2d 814, 818 (Tex.App.— Austin 1986, no writ). Moreover, presentment of the claim for attorney's fees to Pride, in addition to the underlying claim, as a prerequisite to recovery of attorney's fees under section 38.001 is not required; Former Employees need only present the underlying claim. See Law Offices of Moore & Assocs. v. Aetna Ins. Co., 902 F.2d 418, 421 (5th Cir.1990).

■ The court rejects Pride's argument that Former Employees may not recover attorney's fees because their proofs of claim did not include claims for attorney's fees. A creditor is entitled to amend its proof of claim to include a claim for attorney's fees incurred in litigation with the debtor; the court may construe attorney's fees to be implicitly included in a proof of claim. See Tri–State Homes Inc. v. Mears (In re Tri–State Homes Inc.), 56 B.R. 24, 27 (Bankr.W.D.Wis.1985). See also In re Demert & Dougherty Inc., 1999 WL

1140859 *8 (Bankr.N.D.Ill.1999); *In re Ro-necker*, 204 B.R. 552, 554–55 (Bankr. E.D.Mo.1997). At any rate, Former Employees incurred their attorney's fees in postpetition litigation with Pride. The fees had not accrued at the time that they filed their proofs of claim.

■■■ Section 38.001 provides that a person *may* recover reasonable attorney's fees on a claim arising under a contract. Despite the term "may", the Fifth Circuit has interpreted this statute as mandatory: "[u]nder Texas law, when a prevailing party in a breach of contract suit seeks fees, an award of reasonable fees is mandatory, as long as there is proof of reasonable fees ... and the plaintiff has been awarded damages." *Mathis v. Exxon Corp.*, 302 F.3d 448, 462 (5th Cir.2002), *citing* TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (Vernon 2002). *Accord Coffel v. Stryker Corp.*, 284 F.3d 625, 640 (5th Cir.2002) ("[t]he award of reasonable attorneys' fees is mandatory under § 38.001 if the plaintiff prevails in his or her breach of contract claim and recovers damages"). The only discretion the Fifth Circuit permits is discretion to determine the amount of the attorney's fees award. *See id.* The availability of a section 38.001 award is not conditioned on a contractual provision for attorney's fees. *See, e.g., Holland v. Wal–Mart Stores Inc.*, 1 S.W.3d 91, 95 (Tex.

1999) (holding that prevailing party to contract dispute may recover attorney's fees either pursuant to contract or pursuant to statute); *Golden v. Murphy*, 611 S.W.2d 914, 915 (Tex.Civ.App.—Houston [14th Dist.] 1981, no writ) (holding that predecessor to section 38.001 (codified with no changes as section 38.001, *et seq.*) contained "no requirement that the contract sued upon have a provision providing for attorney's fees"). Former Employees satisfy both the procedural and substantive conditions to recovery of attorney's fees under Texas law.

■■■ As Former Employees would otherwise be entitled to recover their attorney's fees under Texas law, the remaining issue, therefore, is whether Former Employees, as unsecured creditors, may recover their postpetition attorney's fees from the estate.

Initially, it should be noted that prior cases from the Northern District of Texas have allowed certain unsecured creditors to recover their postpetition attorney's fees from the bankruptcy estate. *See In re Independent Am. Real Estate Inc.*, 146 B.R. 546 (Bankr.N.D.Tex.1992); *McDonald v. Lorenzo Bancshares Inc. (In re Lorenzo Bancshares Inc.)*, 122 B.R. 270 (Bankr.N.D.Tex.1991); *In re Missionary Baptist Found. of Am. Inc.*, 24 B.R. 970 (Bankr.N.D.Tex.1982).[2] However, given

---

**2.** The *Missionary Baptist* opinion cites a 1968 Fifth Circuit case which permitted an undersecured creditor to recover postpetition attorney's fees as an unsecured claim. *See In re Missionary Baptist Found. of Am. Inc.*, 24 B.R. at 971, *citing LeLaurin v. Frost Nat'l Bank of San Antonio*, 391 F.2d 687 (5th Cir. 1968). The Fifth Circuit case was decided under the Bankruptcy Act. While several cases cite this Fifth Circuit opinion for the proposition that an unsecured creditor may recover postpetition attorney's fees, the Fifth Circuit did not actually consider this issue. *See Sakowitz Inc. v. Chase Bank Int'l (In re Sakowitz Inc.)*, 110 B.R. 268, 274 (Bankr.

S.D.Tex.1989). The lower court permitted the unsecured creditor to recover attorney's fees, but this issue was not appealed to the Fifth Circuit. *See id.* Rather, the Fifth Circuit considered the effect of res judicata on the amount of attorney's fees awarded. *See id.* While the Fifth Circuit did not criticize the decision to award attorney's fees as an unsecured claim, this issue was not actually before the court, thus making the Fifth Circuit's opinion inapplicable on the issue of whether an unsecured creditor may recover postpetition attorney's fees, especially under the Code. *See id.*

subsequent developments in the law and the trend by the majority of courts towards disallowing postpetition attorney's fees to unsecured creditors, the court reconsiders the issue.

The majority of published opinions hold that an unsecured creditor may not recover postpetition attorney's fees from a bankruptcy estate. *See Adams v. Zimmerman,* 73 F.3d 1164, 1177 (1st Cir.1996); *In re Waterman,* 248 B.R. 567, 573 (8th Cir. BAP 2000); *In re Loewen Group Int'l Inc.,* 274 B.R. 427, 444–45 (Bankr.D.Del. 2002); *In re El Paso Refinery L.P.,* 244 B.R. 613, 616–17 (Bankr.W.D.Tex.2000); *In re Smith,* 206 B.R. 113, 115 (Bankr. D.Md.1997); *Homestead Partners Ltd. v. Condor One Inc. (In re Homestead Partners Ltd.),* 200 B.R. 274, 276–77 (Bankr. N.D.Ga.1996); *Chemical Bank v. First Trust of N.Y. Nat'l Ass'n (In re Southeast Banking Corp.),* 188 B.R. 452, 462–463 (Bankr.S.D.Fla.1995), *rev'd on other grounds,* 156 F.3d 1114 (11th Cir.1998); *In re Woodmere Investors Ltd. P'ship,* 178 B.R. 346, 356 (Bankr.S.D.N.Y.1995); *In re Saunders,* 130 B.R. 208, 210 (Bankr. W.D.Va.1991); *In re Alden,* 123 B.R. 563, 564 (Bankr.E.D.Mich.1990); *Sakowitz Inc. v. Chase Bank Int'l (In re Sakowitz),* 110 B.R. 268, 272 (Bankr.S.D.Tex.1989); *Woerner v. Farmers Alliance Mut. Ins. Co. (In re Woerner),* 19 B.R. 708, 713 (Bankr. D.Kan.1982). The majority advances four main reasons why the Code prohibits such a recovery.

First, section 506(b), states that:

[t]o the extent that an allowed secured claim is secured by property the value of which ... is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

11 U.S.C. § 506(b) (2001). Section 506(b) is the only Code provision authorizing recovery of attorney's fees by a creditor. *See In re Saunders,* 130 B.R. at 210.[3] The majority employs the legal maxim of *expressio unius est exclusio alterius,* meaning the expression of one is the exclusion of another, to argue that Congress, by permitting the recovery of attorney's fees in the case of an oversecured creditor, necessarily denied the recovery of attorney's fees in the case of an undersecured or unsecured creditor. "Congress provided for attorney fees only for the secured portion of such a claim. Congress must be presumed to have understood what it was doing. It could easily have provided for attorney fees for the unsecured portion of the claim as well as the secured portion. That it did not do so this Court feels is determinative of the issue." *In re Sakowitz,* 110 B.R. at 272. *Accord In re Loewen Group Int'l Inc.,* 274 B.R. at 444 n. 36 ("If post-petition fees and costs were generally recoverable by all creditors, then Congress would not have expressly provided for their recovery by oversecured creditors in § 506(b)"); *In re Smith,* 206 B.R. at 115; *In re Southeast Banking Corp.,* 188 B.R. at 462–463; *In re Woodmere Investors Ltd. P'ship,* 178 B.R. at 356. As only oversecured creditors are allowed to recover their fees under section 506(b), statutory construction and logic compel the conclusion that unsecured creditors may not recover postpetition attorney's fees.

The second argument advanced by the majority concerns the Supreme Court's opinion in *United Savings Ass'n of Tex. v. Timbers of Inwood Forest Assocs. Ltd.,* where the Court disallowed postpetition interest to unsecured creditors. *See In re*

**3.** Section 506(b) is premised on the existence of an oversecured creditor and an agreement allowing recovery of attorney's fees. Former Employees fail to meet either condition.

*Woodmere Investors Ltd. P'ship*, 178 B.R. at 356. In *Timbers,* the Supreme Court held that section 506(b) prohibits an unsecured creditor from collecting postpetition interest: "[s]ince this provision [section 506(b) ] permits postpetition interest to be paid only out of the 'security cushion,' the undersecured creditor, who has no such cushion, falls within the general rule disallowing postpetition interest." 484 U.S. 365, 372–73, 108 S.Ct. 626, 631, 98 L.Ed.2d 740 (1988). As section 506(b) clearly prohibits an unsecured creditor from recovering postpetition interest, and since section 506(b) speaks identically to attorney's fees as it does to interest, some courts have concluded that the Supreme Court's *Timbers* opinion by implication likewise prohibits the recovery by the unsecured creditor of postpetition attorney's fees. *See Adams,* 73 F.3d at 1177; *In re Loewen Group Int'l Inc.,* 274 B.R. at 444 n. 36; *In re Woodmere Investors Ltd. P'ship,* 178 B.R. at 356; *In re Saunders,* 130 B.R. at 210.

The third argument justifying denial of postpetition fees is based on the premise that an unsecured creditor's claim is calculated as of the date of the bankruptcy filing. *See, e.g., In re Waterman,* 248 B.R. 567, 573 (8th Cir. BAP 2000). Because a creditor's claim is calculated as of the date of the bankruptcy filing, attorney's fees incurred after the filing cannot become part of the claim (except, of course, with respect to oversecured creditors pursuant to section 506(b)): "[it] should be kept in mind that Section 502(b) speaks in terms of the proof of claim *as it existed at the time of the filing of the case.* This is the basis of this Court's distinction between attorney fees incurred on an unsecured claim pre-petition and those incurred post-filing." *In re Sakowitz Inc.,* 110 B.R. at 271 (emphasis in original). *Accord In re Waterman,* 248 B.R. at 573 ("Debtor next asserts that part of the post-default attorneys' fees were incurred for services rendered on April 23, 1999, which was postpetition. Debtor correctly asserts that generally, a creditor's claim is determined as of the date of the filing of the bankruptcy petition and that amounts incurred post-petition are not usually permitted as part of the claim").

Finally, the majority cases present a policy argument. Allowing unsecured creditors to recover postpetition fees is inequitable to other unsecured creditors and may, in some cases, consume the estate. *See In re Loewen Group Int'l Inc.,* 274 B.R. at 444 ("Although a contractual provision providing for the recovery of attorneys' fees and costs may enable an unsecured creditor to pursue recovery of such fees and costs in an action in state court, in the context of bankruptcy, the creditor's right to assert such claims is limited by the provisions of the Bankruptcy Code"); *In re Sakowitz Inc.,* 110 B.R. at 271 ("[A] primary purpose of the Bankruptcy [Code] is to bring about an equitable distribution of the bankrupt's estate among creditors holding just demands . . . this principle should bar enforcement of any contractual provision which would permit one creditor—and not others—to charge the estate with legal expenses associated with a proceeding before the Bankruptcy Court"). One commentator recognized that this perceived unfairness was a significant factor motivating many courts to disallow postpetition attorney's fees to unsecured creditors:

> Generally, it is the larger and more sophisticated creditors who include clauses requiring payment of their attorney fees in their contracts with the debtor. Smaller and less sophisticated creditors may not have included such clauses or may have insufficient bargaining leverage to obtain such a promise. Involun-

tary creditors such as tort claimants have no ability to obtain such a promise. James Gadsden, *Recovery of Attorney Fees as an Unsecured Claim,* 114 BANKING L.J. 594, 603 (1997).

It is not equitable to deplete everyone's "pot", only because of an asserted right granted by a contact. After all, bankruptcy routinely alters creditors rights, and this is simply a situation where the policy of ratable distribution and equitable treatment of the varying interests in bankruptcy should override any asserted rights by unsecured creditors to recover attorney's fees. A minority of published opinions, albeit a sizable minority, permit unsecured creditors to recover postpetition attorney's fees in certain situations. *See Martin v. Bank of Germantown (In re Martin),* 761 F.2d 1163, 1168 (6th Cir.1985); *United Merchs. & Mfrs. Inc. v. Equitable Life Assurance Soc'y of the U.S. (In re United Merchs. & Mfrs. Inc.),* 674 F.2d 134 (2d Cir.1982); *Liberty Nat'l Bank & Trust Co. of Louisville v. George,* 70 B.R. 312, 317 (W.D.Ky.1987); *In re Hunter,* 203 B.R. 150, 151 (Bankr.W.D.Ark.1996); *Tri–State Homes Inc. v. Mears (In re Tri–State Homes Inc.),* 56 B.R. 24, 26 (Bankr. W.D.Wis.1985); *In re Ely,* 28 B.R. 488, 491–92 (Bankr.E.D.Tenn.1983); *In re Missionary Baptist Found. of Am. Inc.,* 24 B.R. 970, 971 (Bankr.N.D.Tex.1982).

The seminal case on the minority view, and one cited by virtually every minority case thereafter, is the Second Circuit's opinion in *United Merchants. In re United Merchs. & Mfrs. Inc.,* 674 F.2d 134. In *United Merchants,* the court held that an unsecured creditor may recover postpetition attorney's fees. *Id.* at 137. As stated by the court:

> When equally sophisticated parties negotiate a loan agreement that provides for recovery of collection costs upon default, courts should presume, absent a clear showing to the contrary, that the creditor gave value, in the form of a contract term favorable to the debtor or otherwise, in exchange for the collection costs provision. Such a creditor should recover more in the division of the debtor's estate because it gave more to the debtor at the time it made the loan.

*Id.* The court further argued that case law does not support a distinction between secured and unsecured creditors who seek to recover attorney's fees in bankruptcy. *Id.* at 137–38, *citing Security Mortgage Co. v. Powers (In re Florida Furniture Co.),* 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928). *United Merchants* was decided under the Bankruptcy Act of 1898. *Id.* at 138 n. 6. Nevertheless, the debtor argued that section 506(b), while not controlling, was illustrative of the law and of Congress's intent. *See id.* at 138. The court answered this argument as follows:

> Section 506(b) ... merely codifies pre-Code law that an oversecured creditor can assert, as part of its secured claim, its right to interest and costs arising under its credit agreement. . . . Neither the statute nor its legislative history sheds any light on the status of an unsecured creditor's contractual claims for attorney's fees.

*Id. United Merchants,* therefore, found no good reason why an unsecured creditor should not be permitted to recover postpetition attorney's fees as an unsecured claim. *Id.* at 138 ("It should always be remembered that a fee which may not be provided for as a matter of statutory right under the Bankruptcy Act may yet be perfectly permissible as a provable claim and a matter of contractual right").

The cases in the majority, in almost every opinion, attack the logic and importance of *United Merchants,* as well as those courts that follow *United Merchants'* holding. The main argument that the majority advances against *United Merchants*

is that *United Merchants* was decided under the Bankruptcy Act, which had no counterpart to section 506(b) of the Code. *See, e.g., In re Woodmere Investors Ltd. P'ship,* 178 B.R. at 355–56; *In re Saunders,* 130 B.R. at 210–11; *In re Sakowitz Inc.,* 110 B.R. at 271–72. United Merchants was not, therefore, expressly presented with the issue of section 506(b)'s role. *See In re Sakowitz Inc.,* 110 B.R. at 271–72. To the extent that *United Merchants* addressed section 506(b), the majority considers *United Merchants* as dicta at best, and in no way authoritative. *See id.*

*United Merchants* has been criticized for considering section 506(b) without also considering section 506(a). *See In re Saunders,* 130 B.R. at 211. The bankruptcy court in *Saunders* noted that:

> 11 U.S.C. § 506(a) provides that an undersecured creditor has an unsecured claim for the deficiency. Section 506(b), which expressly allows contractually authorized attorney's fees for secured claims, immediately follows section 506(a). If attorney's fees were allowable on the unsecured portion of a debt, there would be no need for subsection (b). If Congress had intended for the holders of both secured claims and unsecured claims to recover attorney's fees, it could easily have said so. But it did not.
>
> \* \* \* \* \* \*
>
> Based on its interpretation of sections 506(a) and (b) when those provisions are read together, this court does not believe that the *United Merchants* result was intended by Congress.

*Id.* at 210–11.

At least one minority opinion directly responds to the majority's argument that

section 506(b) and the Supreme Court's *Timbers* opinion on postpetition interest implicitly compels a similar decision with respect to postpetition attorney's fees. *See Homestead Partners Ltd. v. Condor One Inc. (In re Homestead Partners Ltd.),* 200 B.R. 274, 277 (Bankr.N.D.Ga.1996). The court in *Homestead Partners* noted that Timbers prevents unsecured creditors from recovering postpetition interest. *See id.* However, the court pointed to section 502 of the Code, which specifically forbids a claim for unmatured interest (at subsection (b)(2)), but contains no similar provision for attorney's fees. *See id.* "One, therefore, reasonably could conclude that statutory percentage based claims for postpetition fees ... [such as attorney's fees] may be presented via an unsecured claim, notwithstanding section 506(b)." *Id.* Because no Code provision specifically forbids the recovery by an unsecured creditor of postpetition attorney's fees (as it does postpetition interest), the *Timbers* opinion, it is argued, does not apply to postpetition attorney's fees in the same manner as it applies to postpetition interest. *See id.*

The court finds this rationale unconvincing. That section 502(b) makes no mention of attorney's fees does not imply that unsecured creditors can recover postpetition attorney's fees. Section 502(b) directs that the court "shall determine the amount of [a] claim as of the date of the filing of the petition...." 11 U.S.C. § 502(b)(2002). Postpetition attorney's fees cannot, therefore, be included as part of a claim at the time the petition is filed. This is the very point made by the majority's third argument discussed above.[4]

Though the Fifth Circuit has yet to squarely address the recovery by unse-

---

4. The Eleventh Circuit, in *Welzel v. Advocate Realty Invs. (In re Welzel),* 275 F.3d 1308 (11th Cir.2001), construed the interplay between sections 506 and 502 of the Code. There the court addressed the issue of whether an oversecured creditor in a Chapter 7 was

cured creditors of their postpetition attorney's fees, its opinions in similar situations suggest that postpetition fees would be disallowed. The Fifth Circuit has held that federal law governs the enforcement of postpetition attorney's fees, notwithstanding contrary state law or contractual provisions. *See Blackburn–Bliss Trust v. Hudson Shipbuilders Inc. (In re Hudson Shipbuilders Inc.)*, 794 F.2d 1051, 1056 (5th Cir.1986). "Here, a paramount federal interest dictates that federal law shall govern." *Id.* at 1058. As part of this federal interest, "[i]t is a well recognized 'attribute of the broad equity powers of bankruptcy courts to prevent an unjust enrichment of one creditor at the expense of others.' " *Id.* at 1055–56, *quoting In the Matter of Intaco Puerto Rico Inc.*, 357 F.Supp. 1122, 1125 (D.P.R.1973). Allowing one unsecured creditor to recover its attorney's fees from the same pool of funds that is dedicated to other unsecured creditors may be perceived to unjustly enrich one creditor at the expense of others.

A similar situation occurs in the context of failed banks. Bankruptcy and distribution of the assets of failed banks have much in common. *See Interfirst Bank Abilene N.A. v. FDIC*, 777 F.2d 1092,

1096–97 (5th Cir.1985) (analogizing banking law to bankruptcy). In distributing the assets of a failed bank, the Fifth Circuit has made it clear that unsecured creditors may not recover attorney's fees out of the pool of funds used to pay all unsecured creditors. *See id.* at 1097. The Fifth Circuit stated that:

> the claimed attorney's fees run afoul of the requirement that the assets of a failed bank be ratably distributed among the bank's creditors holding approved or adjudicated claims.... Since Interfirst does not hold a security interest, its attorney's fees would perforce be paid at the expense of the bank's other creditors from a fund otherwise available to all of them.... We thus conclude that ... where there is no collateral fund from which they can be recovered, a claim for attorney's fees cannot be asserted against the assets of a failed bank.

*Id.* (internal citations omitted). The same rationale would disallow attorney's fees to unsecured creditors in bankruptcy, because the same principles of ratable distribution and fairness to all unsecured creditors apply.

---

entitled to recover attorney's fees pursuant to an underlying loan agreement and state statute. On rehearing en banc, the *Welzel* court stated that section 506(b) focuses on the reasonableness of attorney's fees rather than enforceability of such fees. The court then addressed whether the bankruptcy court should bifurcate a claim for fees between secured and unsecured claims under section 506(b) and section 502 based on the reasonableness of the fees, or whether the court should limit the fees to those that are reasonable with the portion deemed unreasonable disallowed. The court held that a bifurcation approach was proper. Section 502 addresses allowance or disallowance of a claim; section 506 has a narrower focus as it addresses whether a claim is secured or not.

The *Welzel* court stated that section 506 must be read "against the backdrop of [the]

general instructions enunciated in section 502." *Id.* at 1317. The court held that the fees deemed reasonable were secured while those found to be unreasonable are unsecured. Section 506(b) was not used to disallow the fees found not to be reasonable.

While the *Welzel* case addressed an oversecured creditor claiming prepetition attorney's fees, it is instructive in construing the relationship between sections 506 and 502. This construction further supports the majority's view regarding an unsecured creditor's right to recover postpetition attorney's fees. Section 502 addresses allowance or disallowance of claims. It requires that claims be determined as of the date of filing. Postpetition fees are, by definition, incurred *after* the filing. Section 506(b) does not address attorney's fees by an unsecured creditor.

At least two courts have reversed themselves on the question of whether unsecured creditors are entitled to recover postpetition attorney's fees, with the later opinions reversing prior decisions that permitted the recovery of such fees. *Compare, e.g., In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346, 356 (Bankr.S.D.N.Y. 1995) (disallowing attorney's fees), *with In re Ladycliff College*, 56 B.R. 765 (S.D.N.Y. 1985) (allowing attorney's fees); *Chemical Bank v. First Trust of N.Y. Nat'l Ass'n (In re Southeast Banking Corp.)*, 188 B.R. 452, 462–463 (Bankr.S.D.Fla.1995) (disallowing attorney's fees), *rev'd on other grounds*, 156 F.3d 1114 (11th Cir.1998), *with In re Holywell Corp.*, 68 B.R. 134, 136 (Bankr.S.D.Fla.1986) (allowing attorney's fees).

The court need not address whether Pride's solvency (or not) alters the court's analysis as no evidence was presented on the issue.

The court agrees with the majority and concludes that Former Employees are not entitled to their postpetition attorney's fees.

### Belf's and Johnson's Claims for Severance

The court, in the July 8 order, allowed claims for unpaid severance by Bonds, Chase, and Yocum. No mention was made regarding claims for unpaid severance filed by Belf and Johnson. Former Employees' Motion asks the court to reconsider this, arguing that Johnson filed a proof of claim which included a claim for "severance— amount unknown," and that Belf, whose filed proof of claim did not mention severance payments, orally amended his proof of claim in open court to include unpaid severance payments. Belf and Johnson contend that they are each entitled to the same severance package as was given to the other three Former Employees, each

of whom received approximately $27,788.54 in severance payments. Specifically, Johnson originally received no severance package, thus he claims severance payments in the amount of $27,788.54. Belf received a severance package in the amount of $21,249.99, and now claims that he is entitled to an additional $6,538.54.

Belf and Johnson worked for Pride's crude gathering division. On October 1, 1999, Pride sold this division to Sun Pipeline Services Company. Sun hired Belf and Johnson almost immediately after the sale. At no time were either Belf or Johnson unemployed. Johnson did not receive a severance package from Pride when he left to begin his employment with Sun. Belf received three months severance from Pride, in return for a waiver and release of all claims pertaining to his employment. Sun did not hire the other three Former Employees, who therefore rode out the terms of their employment contracts with Pride. Once those terms expired, Pride did not renew their employment contracts but instead offered each of the three approximately $27,788.54 in severance payments in exchange for waivers and releases of claims.

Belf and Johnson failed to present any evidence or argument regarding their claims for severance pay. While Johnson may have filed a proof of claim to this effect, and while Belf may have amended his claim in open court to encompass his claim for severance, the issue of severance pay was not presented to the court at trial. Former Employees' November 13, 2001 brief made no mention of Belf's and Johnson's claims for severance. Nor did their November 19, 2001 brief in response to Pride's trial brief. In fact, when asked by his counsel to specify his request, Johnson testified that he claimed 1/9th of each of the $300,000 and $6.9M bonuses; he did not include a claim for severance. Belf

and Johnson first presented this issue to the court in their initial motion for reconsideration. Accordingly, in its December 21, 2001 ruling on the record, wherein the court held that "[t]he claims for unpaid severance payments ... will be allowed," the court meant only the claims for unpaid severance of Bonds, Yocum, and Chase because these were the only Former Employees who specifically raised their severance claims with the court.

 A proof of claim constitutes prima facie evidence of its validity and amount. *See California State Bd. of Equalization v. Official Unsecured Creditors' Committee (In the Matter of Fidelity Holding Co. Ltd.)*, 837 F.2d 696, 698 (5th Cir.1988); *Professional Investors Ins. Group Inc. v. United Overseas Bank (In re Professional Investors Ins. Group Inc.)*, 232 B.R. 870, 875–76 (Bankr.N.D.Tex. 1999). The party objecting to the proof of claim has the initial burden of proof in rebutting the proof of claim. *See id.* If this burden is met, the claimant bears the ultimate burden of proof. *See id.* Even assuming, *arguendo*, that Belf's and Johnson's proofs of claim properly claimed unpaid severance payments, neither Belf nor Johnson met his burden of proof of proving entitlement to the claimed severance payments.

Pride met its initial burden of proof in rebutting Belf's and Johnson's claims for severance pay. At trial it was established that neither Belf nor Johnson was unemployed, and they each left Pride voluntarily. Each of the three other Former Employees signed waivers and releases of the claims against Pride as a condition to receiving their severance packages. Johnson signed no such agreement, whereas Belf signed a waiver and release of claims in exchange for $21,249.99, which Pride admittedly paid. Thus, the evidence suggests that Johnson was not entitled to a severance package because he left Pride voluntarily and signed no waiver and release of claims, while Belf in fact received the severance package that he contracted to receive.[5]

The burden therefore shifted to Belf and Johnson to prove their entitlement to the $27,788.54 severance package received by the other Former Employees. Any such entitlement can only be derived from their employment contracts with Pride, which provided that "the Executive shall be entitled to participate in and receive the same ... severance ... bonuses ... and other benefits as are provided to executive officers of the Company or its affiliates." With respect to bonuses, the court held that a latent ambiguity existed—first, who constituted an executive officer for purposes of bonuses; second, what bonuses were such officers to receive? The same rationale applies with respect to severance payments. To say that Pride's officers must receive the same severance is latently ambiguous—what severance are such officers to receive?

---

5. The evidence showed that Belf did not receive a severance package as a matter of right. Instead of commencing employment with Sun, Belf considered merely riding out the remainder of his contract with Pride. Rather than employ Belf without him having anything meaningful to do in light of the sale of his division, Pride and Belf agreed to the three month severance payment as consideration for Belf voluntarily leaving Pride. Thus, Belf's experience shows that he had no right to severance in his situation, but that Pride granted such severance as a way of saving itself the expense of Belf's continued employment pursuant to his contract. Belf's experience therefore shows that Johnson likewise would have had no right to severance in his situation. It was Johnson's misfortune that he did not negotiate a severance payment from Pride in return for the termination of his employment contract.

Belf and Johnson failed to establish a right to receive a severance. They contend that because the other three Former Employees each received a $27,788.54 severance package, they too are entitled to the same. However, just as the court found that the employment contracts did not entitle each officer to the same amount of bonus, the court finds that the employment contracts did not entitle each officer to the same severance pay. As demonstrated, Belf and Johnson each left Pride under circumstances different than that of the three other Former Employees. Pride negotiated a smaller severance payment for Belf and offered no severance to Johnson. Belf and Johnson failed to meet their burden of proving an entitlement to treatment different than that afforded them by Pride.

### Reconsideration of Bonus Amounts Allowed

 Former Employees ask the court to reconsider the bonuses awarded to Former Employees by requesting reconsideration of the rationale employed by the court in setting the bonus amount for each of the Former Employees. Specifically, Former Employees ask the court to reconsider its finding that (1) "same bonus" does not mean "equal bonus"; (2) the extent of involvement by Former Employees in Pride's recovery did not justify awarding the Former Employees a bonus equal to that received by the key executives; and (3) that the ownership of unit appreciation rights does not govern the distribution percentages of bonuses. Inasmuch as Former Employees seek reconsideration of the court's findings based on these arguments, Former Employees' motion is nothing more than a rehash of their original arguments considered by the court during the trial and during the subsequent hearing on damages. The court denies reconsideration of this matter. *See, e.g., Colley*

*v. National Bank of Tex. (In the Matter of Colley)*, 814 F.2d 1008, 1010–11 (5th Cir. 1987).

### *Conclusion*

In conclusion, Former Employees have presented no good cause, either in equity or in law, for the court to reconsider its prior holdings in this case. Former Employees may not recover their postpetition attorney's fees from the estate; Belf and Johnson failed to meet their burden of establishing an entitlement to a severance equal to that of the other Former Employees; and Former Employees have presented no new arguments concerning the amount of bonuses awarded. The relief requested by Former Employees' motion is denied.