In re GLOBAL INDUSTRIAL
TECHNOLOGIES, INC.,
et al., Debtors.

Global Industrial Technologies Services
Company, Global Industrial Technolo-
gies, Inc., GPX Forge–Acquisition,
Inc., GPX Forge, Inc., GPX Forge–U,
Inc., GPX Corp., and RHI Refracto-
ries America Inc., Movants,

v.

Tanglewood Investments,
Inc., Respondent.

No. 02–21626JKF.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 13, 2005.

Nicholas R. Pagliari, Reed Smith LLP, Paul M. Singer, Reed Smith, Gregory L. Taddonio, Amy M. Tonti, Reed Smith LLP, David Ziegler, Esq., Reed Smith, LLP, Lisa R. Kerszencwejg, Cohen & Grigsby, P.C., Pittsburgh, PA, for debtors.

Peter Nicholas Pross, Eckert, Seamans, Cherin & Mellott LLC, Pittsburgh, PA, for defendant.

## MEMORANDUM OPINION [1]

JUDITH K. FITZGERALD,
Bankruptcy Judge.

Before the court is Debtors' Objection to

---

1. This memorandum constitutes the court's findings of facts and conclusions of law in this

Unliquidated Claims [2] of Tanglewood Investments, Inc. ("Tanglewood") and Tanglewood's Motion for Summary Judgment on Objection to Unliquidated Claims of Tanglewood Investments, Inc.

Under Fed.R.Civ.Pro. 56(c), made applicable in these proceedings by Fed.R.Bankr.Pro. Rules 9014 and 7056, summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, the court must review the record, arguments of counsel, pleadings, and inferences in a light most favorable to Debtors, the party opposing the motion.

## Background

As of June 22, 1999 (the "Acquisition Date"), AF Acquisition Company purchased certain assets from UCR Inc., AFC Acquisition, Inc., and GPX Forge f/k/a Ameri–Forge Corporation (the "Old Ameri–Forge") pursuant to the Asset Purchase Agreement ("APA"). Dkt. 3112, Stipulation of Facts (hereafter "SOF") at Exh. A ¶ 1. At some point after the Acquisition Date, purchaser AF Acquisition Company changed its name to Ameri–Forge Corporation (the "New Ameri–Forge"). SOF at ¶ 2. Debtor Global Industrial Technologies, Inc. (principal Debtor in these consolidated cases at Bankruptcy No. 02–21626) is the sole stockholder of Debtor GPX, Inc., (02–21632) and GPX, Inc., is the sole stockholder of Debtor GPX Forge, Inc., (02–21636). SOF at ¶ 3.

The relationship between Tanglewood and the purchaser, New Ameri–Forge, has not been made clear to the court. Tanglewood was not a signatory to the APA. However, there appears to be no dispute among the parties in interest that Tanglewood stands in the place of New Ameri–Forge and possesses whatever rights and obligations New Ameri–Forge obtained in the APA. Therefore, for the purposes of this contested matter, the court will assume that Tanglewood has standing to file the proofs of claim and to bring the summary judgment motion. Further, unless identification of a particular corporate entity is required, the court will refer to the buyer in the APA as Tanglewood and the sellers as Debtors.

On December 22, 2000, 25 employees of Old Ameri–Forge and/or New Ameri–Forge (the "Mendez Plaintiffs") commenced a lawsuit against Tanglewood, Debtor Global Industrial Technologies, Inc., and various of their affiliates and subsidiaries (together, the "Mendez Defendants") as joint defendants in *Roberto C. Mendez, et al. v. Ameri–Forge Corporation et al.* (Cause No.2000–65256) (the "Mendez Suit"), in the 11th Judicial District Court of Harris County, Texas, asserting claims sounding in, *inter alia,* harassment, disparate treatment/discrimination in wages, assault, harassment/hostile work environment and retaliation. SOF at ¶ 12.

On February 12, 2001, the Mendez Defendants removed the Mendez Suit to the United States District Court for the South-

contested matter. The court's jurisdiction is not at issue.

**2.** Debtors' original objection was asserted against Claims 3306, 3307, 3308, 3309, 3310, 3311 and 3312 (the "Tanglewood Claims"). In their joint Stipulation of Facts. Dkt. No. 3112 at ¶ 25, Debtor and Tanglewood agreed

that any order of this court allowing or disallowing the Tanglewood Claims would also apply to Claims 3313, 3314, 3315, 3316, 3317 and 3318 (the "Ameri–Forge Claims" and, together with the Tanglewood Claims, the "claims"). The court adopts this provision of the Stipulation of Facts.

ern District of Texas (Houston Div.) (Case No. H–01–0523). SOF at ¶ 13.

Debtors engaged the law firm of Jackson Lewis Schnitzler & Krupman ("JLS & K") to respond to and defend against the Mendez Suit. SOF at ¶ 14. Tanglewood engaged the firm of Locke Liddell & Sapp, LLP ("LLS") to defend against the Mendez Suit. SOF at ¶ 15.

On May 25, 2001, New Ameri–Forge and Tanglewood filed a petition for declaratory judgment in the case styled *Ameri–Forge Corp. et al. v. UCR, Inc., et al.*, Cause No.2001–27322 (the "Declaratory Judgment Action"). SOF at ¶ 17. On January 28, 2002, New Ameri–Forge and Tanglewood filed a Motion for Summary Judgment in the Declaratory Judgment Action. SOF at ¶ 18.

On February 14, 2002, Global Industrial Technologies, Inc., and certain of its affiliates filed petitions for relief under Chapter 11 of the Bankruptcy Code. Additional affiliates filed voluntary petitions with the court on February 22 and March 19, 2002. These cases are jointly administered for procedural purposes only. The Debtors continue as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these cases.

As of the petition date, the Mendez Suit was in the discovery stage and no depositions had been taken. Both the Mendez Suit and the Declaratory Judgment Action were stayed pursuant to § 362(a) of the Bankruptcy Code. SOF at ¶ 20–21.

Tanglewood has submitted 13 claims (seven in its own name and six in the name of New Ameri–Forge) seeking contribution and/or indemnification from Debtors in connection with the Mendez Suit and the Declaratory Judgment Action.

**Contribution in the Mendez Suit**

■ In the Mendez Suit, current and former employees of the Debtors and Tanglewood seek unspecified damages against the Debtors and Tanglewood for alleged violations of their constitutional and civil rights and for alleged discrimination on the basis of nationality and alleged unlawful termination. In its proofs of claim, Tanglewood seeks contribution against Debtors as joint defendants for the Debtors' proportionate share of damages and other amounts the Mendez Plaintiffs may recover from Tanglewood.

The court notes that Tanglewood has indicated that it has dropped its demand for contribution from the Debtors in the Mendez Suit.

> (The Tanglewood Entities have abandoned their efforts to obtain an unsecured claim for any contingent liabilities (such as they may be) to the Plaintiffs in the Mendez Suit.)

Summary Judgment Motion, Dkt. No. 3206 at ¶ 9.

■ To the extent that there is any ambiguity or irregularity in Tanglewood's abandonment of its contribution demand, the court also finds that § 502(e)(1)(B) of the Bankruptcy Code requires the court to disallow portions of the claims that seek contribution. A claim (or portion of a claim) must be disallowed under § 502(e)(1)(B) if three conditions are met: (i) the claim must be contingent; (ii) the claim must be for reimbursement or contribution; and (iii) the claimant must be co-liable with the Debtor with respect to the claim. *In re Pinnacle Brands, Inc.*, 259 B.R. 46, 55 (Bankr.D.Del.2001). First, a demand for contribution where there has been no determination of liability of the claimant, and thus no liability incurred or funds actually paid out by the claimant, is unquestionably contingent. Second, the proofs of claim at issue in this controversy

explicitly seek "contribution" from Debtors for amounts that the Mendez Plaintiffs might recover from Tanglewood. Third, all the proofs of claim seek contribution "against [Debtors] for their proportion of any damages, costs, expenses or other amounts the plaintiffs may ultimately recover from Tanglewood ...,"[3] which can only occur if Debtors and Tanglewood are co-liable on the claim.

Based on the apparent abandonment of the contribution demand by Tanglewood and the provisions of § 502(e)(1)(B) of the Bankruptcy Code, the court sustains the objection of Debtors to those portions of the proofs of claim seeking contribution from the Debtors to Tanglewood.

### Indemnification and the LLS Fees

■ In the Declaratory Judgment Action (identified in the proofs of claim as the Indemnity Action), Tanglewood sought judicial determination that Tanglewood had the right to complete indemnification from the Debtors for all of Tanglewood's liability in the Mendez Suit, including costs, expenses, attorneys' fees and other charges. Tanglewood claims its right to indemnification based on provisions in Article XI of the APA.

Although the Declaratory Judgment Action has been stayed pursuant to § 362 of the Bankruptcy Code, the issues raised in the Declaratory Judgment Action form the core of the summary judgment motion presently before the court.

> ... [A]t this time, the Tanglewood Entities are seeking recovery under the Claims solely for the *$321.073.07* in LLS's fees and expenses already incurred in the Mendez Suit, the Declaratory Judgment Action, and these Bankruptcy Cases.

Summary Judgment Motion, Dkt. No. 3206 at ¶ 9 (emphasis in original). Hereinafter,

the court will refer to this demand for $321,073.07 in fees and expenses as the "LLS Fees."

■ As a preliminary matter, the court finds that § 502(e)(1)(B) does not apply to the LLS Fees. These fees have already been incurred and billed and are therefore not contingent. Consequently, Debtors' objection based on § 502(e)(1)(B) to that portion of the claims regarding the LLS Fees is overruled.

Tanglewood bases its claims to indemnification for the LLS Fees on its rights under ¶ 11.2 and the definition of damages in the APA.

> 11.2. **Indemnification and Payment of Damages by Parent** [Debtor Global Industrial Technologies, Inc.], **GPX and Sellers.** Parent, GPX and Sellers, jointly and severally, will indemnify and hold harmless Buyer [Tanglewood] and its Representatives, stockholders, controller persons and other Related Persons (collectively, the "Buyer Indemnified Persons") for, and will pay to the Buyer Indemnified Persons the amount of, any Damages sustained or incurred by any Buyer Indemnified Person to the extent relating to, resulting from or arising out of, or any allegation by any third party of: .... (c) the Excluded Assets or the Excluded Liabilities.

Art I, p. 2 of the APA defines damages to include:

> ... costs, disbursements, or expenses (including, without limitation, fees, disbursements, and expenses of attorneys, accountants and other professional advisors...) of any kind or nature whatever.

After the Mendez Suit was filed, Tanglewood made a demand on the Debtors for indemnification for the cost of defense and

---

**3.** Tanglewood Proof of Claim 3006 at I. Identical language appears in all the claims.

any liability arising from the Mendez Suit.[4] In a letter dated February 7, 2001, the Debtors, by their in-house counsel, Michael A. Schalk, agreed that they would "assume defense of the allegations of the 25 individuals in the action titled [the Mendez Case]", but that

> Global [the Debtors] reserves its right to disclaim responsibility for one or more of these claims under Texas law or the Asset Purchase Agreement, if it finds in its investigation of the underlying facts that its indemnity for one or more of the underlying claims does not apply.

Letter of Michael A. Schalk to Hanna Fister, February 7, 2001, SOF Exh. B.

In its letter of February 14, 2001, Tanglewood, through its counsel Hanna Fister, stated:

> The new Ameri–Forge and Tanglewood accept your assumption of the defense and of the indemnity but do not agree with your reservation of rights. Because of this reservation, the new Ameri–Forge and Tanglewood reserve their rights to have their own counsel, Locke Liddle & Sapp LLP, to represent them and participate in the defense of the suit as co-counsel.

Letter of Hanna Fister to Michael A. Schalk, February 14, 2001, SOF Exh. B.

There is no indication in the record that Debtors replied to Tanglewood's February 14, 2001, letter before Tanglewood sent a followup letter on March 2, 2001. The March 2nd letter contained a formal demand that Debtors withdraw JLS & K as counsel to Tanglewood and that JLS & K be replaced by LLS if Debtors insisted on their reservation of rights. Letter of Han-

na Fister to Michael Schalk, March 2, 2001, SOF Exh. B.

On March 5, 2001, Debtors responded to Tanglewood's February 14, 2001, letter in which the Debtors explicitly assumed the defense of Tanglewood, rejected responsibility for the LLS Fees and insisted on their reservation of rights:

> I wish to confirm that *Global Industrial Technologies has assumed the defense of new Ameri–Forge and Tanglewood Investments, Inc.,* pursuant to the terms of the indemnification provisions of the Asset Purchase Agreement among the parties....
>
> Global does not intend to, and is not responsible for, the cost of your [i.e., LLS'] representation in that capacity, *since that defense is being provided.* Moreover, as *Global is required to indemnify and defend in this case,* a reservation of rights is clearly appropriate in these circumstances until it is certain that the indemnification does indeed apply.

Letter of Michael A. Schalk to Hanna Fister, March 5, 2001, SOF Exh. B (emphasis added).

From the above entries in the record of this contested matter, it is clear that Tanglewood made a demand on Debtors for indemnification for the cost of defense and any liability arising from the Mendez Suit. Debtors explicitly assumed the defense of Tanglewood. In their pleadings, Debtors confirmed that they voluntarily assumed the defense of the Mendez Suit "to the full extent of their responsibility." Debtors' Reply to Motion for Summary Judgment, Dkt. No. 3274 at 2.

---

**4.** The letter or other communication by which Tanglewood made its demand is not in the record. However, Debtors' letter to Tanglewood on February 7, 2001, is addressed in reply to Tanglewood's "letter of January 23, 2001." SOF Exh. B. A Tanglewood letter or other communication on January 23, 2001, would be consistent with the filing of the Mendez Suit on December 22, 2000.

Much of the controversy in this matter has concerned the extent of the Debtors' responsibility. The Debtors argue that they are only responsible under ¶ 11.2 for defense of the "Excluded Liabilities." The Excluded Liabilities are defined in APA ¶ 2.2 as "any claims against, or liabilities, commitments, Contracts, agreements or obligations of any nature whatsoever of the Sellers other than the Assumed Liabilities."

Responsibility for indemnification for the Excluded Liabilities is given to the Debtors pursuant to ¶ 11.2. Responsibility for indemnification for the Assumed Liabilities is given to Tanglewood pursuant to ¶ 11.4. These Assumed Liabilities are defined in Article I of the APA as "(a) any current liabilities of Sellers reflected on the Closing Date Balance Sheet (which shall not include any current or deferred Income Tax liabilities) and (b) the Assigned Contracts."

Debtors contend that they were only responsible for defending and indemnifying Tanglewood against damages arising from the Excluded Liabilities, which include only those claims that may be due to Debtors' conduct before the Acquisition Date. Debtors also argue that Tanglewood's Assumed Liabilities include any damages arising from Tanglewood's conduct after the Acquisition Date.

■ The focus of the arguments, therefore, has been when the conduct that gave rise to potential damages occurred. Both Debtors and Tanglewood have an interest in defending the primary issue of liability in the Mendez Suit. However, their interests separate as to the apportionment of liability, assuming, without deciding, that Plaintiffs meet their burden of proof. JLS & K has an irremediable conflict of interest in representing both Debtors and Tanglewood because it is in the Debtors' interest to show that the allegedly abusive

conduct that gave rise to potential damages occurred after the Acquisition Date. Tanglewood's interest, however, is best served by proof that the conduct occurred before the Acquisition Date.

The court finds merit in Tanglewood's argument that JLS & K has an irremediable conflict of interest in representing both Debtors and Tanglewood, assuming that Defendants must put on a defense at all, based on the following findings of fact which are evident on this record:

1.  Any damages that might arise from the allegations of abuse by 16 of the 25 Mendez Plaintiffs could only be attributed to the Debtors, because those 16 employees were employed only by Old Ameri–Forge and they were terminated before the Acquisition Date.

2.  One of the remaining nine Mendez Defendants (the "Nine Defendants"), Felipe Baron, was terminated by Old Ameri–Forge before the Acquisition Date but was re-hired by Old Ameri–Forge before the Acquisition Date and was terminated by New Ameri–Forge after the Acquisition Date. It is unclear on this record whether, and if, the alleged abuse of any of the Nine Defendants occurred before, during, after or continuously before and after the Acquisition Date.

3.  The Debtors and Tanglewood had adverse interests in the Mendez Suit. It would be in Debtors' interests to establish that any abuse of the Nine Defendants occurred, to the greatest extent possible, post-acquisition and in Tanglewood's interests to establish that the abusive conduct occurred, to the greatest extent possible, pre-acquisition. Further, as yet, the record contains no evidence as to whether any abusive

conduct might have begun in the pre-acquisition period and continued after the acquisition date, which, if proven, would lead to the even more complex problem of apportioning potential damages between Debtors and Tanglewood.

4. JLS & K, the counsel assigned by Debtors to the defense of Tanglewood, is a Texas law firm subject to the disciplinary rules of professional conduct of the State of Texas. The Texas Disciplinary Rules of Professional Conduct prohibit simultaneous representation of parties with adverse interests without consent of both parties.

(a) A lawyer shall not represent opposing parties to the same litigation.

(b) In other situations and except to the extent permitted by paragraph (c), a lawyer shall not represent a person if the representation of that person:

(1) involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm; or

(2) reasonably appears to be or [to] become adversely limited by the lawyer's or law firm's responsibilities to another client or to a third person or by the lawyer's or law firm's own interests.

(c) A lawyer may represent a client in the circumstances described in (b) if:

(1) the lawyer reasonably believes the representation of each client will not be materially affected; and

(2) each affected or potentially affected client consents to such representation after full disclosure of the existence, nature, implications, and possible adverse consequences of the common representation and the advantages involved, if any.

TEX. DISC. R. PROF. COND. 1.06 (a, b & c). Codified at V.T.C.A., Govt.Code T. 2, Subt. G App. A, Art 10, § 9, Rule 106.

5. Tanglewood did not consent to its representation by JLS & K. Rather, Tanglewood actively opposed it.

For all the above reasons, the court concludes that JLS & K can not represent both Debtors and Tanglewood in the Mendez Suit, even only as to the Excluded Liabilities, because the interests of Debtors and Tanglewood were directly and materially adverse in determining the timing and/or apportioning of liability for any abusive conduct allegedly directed toward the Nine Defendants.

Thus, the court agrees with Tanglewood that the Debtors could not fulfill the Debtors' obligation to provide Tanglewood with a defense to the Excluded Liabilities through the law firm of JLS & K. JLS & K can not perform this role under Texas law. Consequently, Debtors did not assume the defense of the Mendez Suit "to the full extent of their responsibility" under ¶ 11.2 of the APA.

The Debtors (i) acknowledged that they were obligated to provide a defense, at least to the extent of the Excluded Liabilities; (ii) appointed as counsel to Tanglewood JLS & K, a law firm that can not represent Tanglewood, even as to the Excluded Liabilities; and (iii) refused to withdraw JLS & K upon demand of Tanglewood. Thus, the court finds that Debtors defaulted on their obligation to defend Tanglewood in the Mendez Suit against damages arising under ¶ 11.2 of the APA and therefore Debtors are liable for reasonable LLS Fees.[5]

---

5. The above finding that the Debtors defaulted on their obligation under the APA because of the conflict of their appointed counsel, JLS & K, is sufficient, in and of itself, to hold the

## The LLS Fees Must Be Reasonable, Incurred Prepetition and After the Right to Indemnification Arose

■ The Debtors have argued that the LLS Fees are not reasonable in that the LLS Fees were more than four times greater than the fees incurred by JLS & K, the lead counsel. They also argue that LLS may have failed to settle the case for approximately $100,000 and that failure to settle raises questions about the reasonableness of incurring fees substantially in excess of that settlement amount.

Tanglewood addressed the substantive objections of the Debtors to the reasonableness of fees [6], but further argued that neither the APA nor Texas law imposes a reasonableness test on the LLS Fees.

The court finds that Tanglewood is estopped from opposing a reasonableness test on its fees because its proofs of claim demand "reasonable attorneys' fees".

> Tanglewood also has the right to complete indemnification from Global for all of Tanglewood's liability (including all costs, expenses, *reasonable attorneys' fees* and other charges) in the Mendez Suit, pursuant to that one certain Asset Purchase Agreement, dated June 22, 1999 ... executed by Global and certain other of its affiliates/subsidiaries.

Tanglewood Proof of Claim 3006 at 1 (emphasis added). The "reasonable attorneys' fees" demand appears in all claims at issue in this contested matter (Proofs of Claim 3306, 3307, 3308, 3309, 3310, 3311, 3312, 3313, 3314, 3315, 3316, 3317, 3318).

Even if the court were to allow Tanglewood to amend its proofs of claim deleting the "reasonable attorneys' fees" language, the court finds that ¶ 11.9(a) of the APA imposes a duty on the indemnified party to mitigate liability.

> 11.9(a) Each indemnified party shall make commercially reasonable efforts to mitigate any claim or liability that an indemnified party asserts under this Article. In the event that an indemnified party shall fail to make such commercially reasonable efforts to mitigate any claim or liability, then notwithstanding anything else to the contrary contained herein, the indemnifying party shall not be required to indemnify any indemnified party for any Damages that could reasonably be expected to have been avoided if the indemnified party had made such efforts.

Debtors liable for the reasonable LLS Fees. Independently of the above analysis, the court also finds that § 11.7(b) of the APA supports the court's finding that the Debtors were required to obtain consent from Tanglewood for any counsel appointed by the Debtors to represent Tanglewood.

> 11.7(b). If any Proceeding referred to in Section 11.7(a) is brought against an indemnified party and it gives notice to the indemnifying party of the commencement of such Proceeding, the indemnifying party will be entitled to participate in such Proceeding, and, to the extent that it wishes, *to assume the defense of such Proceeding with counsel satisfactory to the indemnified party* and, after notice from the indemnifying party to the indemnified party of its election to assume the defense of such Proceeding, the indemnifying party will not, as long as it diligently conducts such defense, be liable to the indemnified party under this Article XI for any fees of other counsel or any other expenses with respect to the defense of such Proceeding, in each case subsequently incurred by the indemnified party in connection with the defense of such Proceeding ....

SOF, Exhibit A at § 11.7(b) (emphasis added). Counsel satisfactory to Tanglewood was not offered by the Debtors.

6. The court does not at this time consider the merits of either Debtors' or Tanglewood's arguments regarding particular examples of reasonableness but defers judgment until the hearing on the LLS Fees.

This paragraph of the APA provides that the indemnifying party is not required to indemnify the indemnified party for any damages that could reasonably be expected to have been avoided. Article I of the APA includes the costs of attorneys' fees in its definition of damages. Therefore, the court concludes that ¶ 11.9(a) requires that the LLS Fees be reasonable.

■ The Debtors have also objected to the LLS Fees on the ground that they may relate to proceedings other than the Mendez Suit. As will be discussed below, the court will disallow any fees and expenses incurred postpetition, which includes the LLS Fees in connection with the motion for relief from stay in this court and the attempt to transfer the Mendez Suit to the bankruptcy court. The court also notes that, by their terms, the claims seek indemnification for costs in the Mendez Suit and the Declaratory Judgment Action. The claims do not seek indemnification for proceedings before the Mendez Suit was commenced on December 22, 2000. However, the time records submitted by Tanglewood date back three months before the filing of the Mendez Suit and do not appear to be within the indemnification that may be owed by Debtors. Thus, Tanglewood must prove that the LLS Fees in the three months preceding the filing of the Mendez Suit are indemnifiable.

The Declaratory Judgment Action was an attempt to enforce Tanglewood's rights under the APA. To the extent that the LLS Fees are reasonable and relate to the Declaratory Judgment Action, they will be allowed. A hearing will be set for that purpose.

Finally, the court must determine if the allowed LLS Fees must be limited to prepetition amounts. There is no binding precedent in the Third Circuit on the issue of whether unsecured creditors may include postpetition attorneys' fees in their claims. The court has reviewed the pleadings, arguments of counsel and the relevant case law.

■ The court agrees with the majority of courts[7] that unsecured creditors may not include postpetition attorneys' fees in their claims from a bankruptcy estate. *See Adams v. Zimmerman,* 73 F.3d 1164, 1177 (1st Cir.1996); *In re Southeast Banking Corp.,* 188 B.R. 452, 462–63 (Bankr. S.D.Fla.1995), *rev'd on other grounds,* 156 F.3d 1114 (11th Cir.1998); *In re Waterman,* 248 B.R. 567, 573 (8th Cir. BAP 2000); *In re Hedged–Investments Associates, Inc.,* 293 B.R. 523 (D.Colo.2003); *In re Loewen Group Intern., Inc.,* 274 B.R. 427 (Bankr.D.Del.2002); *In re Pride Companies, LP,* 285 B.R. 366 (Bankr.N.D.Tex. 2002); *In re Woodmere Investors Ltd. Partnership,* 178 B.R. 346, 356 (Bankr. S.D.N.Y.1995); *In re Sakowitz, Inc.,* 110 B.R. 268 (Bankr.S.D.Tex.1989). As discussed in *In re Pride Companies,* 285 B.R. at 372, the majority of courts rely on four reasons for this position.

First, the majority relies on the maxim of *expressio unius est exclusio alterius* (the expression of one is the exclusion of the alternatives). Because § 506(b) of the Bankruptcy Code expressly provides for the allowance of postpetition attorneys' fees for oversecured creditors, and neither § 506(b) nor any other provision of the Bankruptcy Code provides for the allowance of such fees for unsecured creditors, it follows that unsecured creditors have no

7. The court takes note of Tanglewood's argument that there is a split in the Circuits regarding the allowability of postpetition attorneys' fees in unsecured claims. The court has reviewed the cases cited in Tanglewood's pleadings. The court finds the majority opinions cited above more persuasive.

clear entitlement to postpetition attorneys' fees.

Second, a decision of the United States Supreme Court supports the majority position. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). In *Timbers,* the Supreme Court found that under § 506(b) only oversecured creditors were entitled to postpetition interest on their claims. *Timbers,* 484 U.S. at 372–73, 108 S.Ct. 626. Because § 506(b) expressly provides for the allowance of both postpetition interest and fees, the majority of courts addressing this issue has applied this reasoning to restrict the allowance of postpetition fees to oversecured creditors only.

Third, § 502(b) of the Bankruptcy Code requires a court to calculate the amount of a claim as of the petition date. It is axiomatic that, as of the petition date, postpetition attorneys' fees have not been incurred. Thus, unsecured prepetition claims cannot include postpetition attorneys' fees.

Finally, it is inequitable to allow certain unsecured creditors to recover postpetition attorneys' fees at the expense of similarly situated claimants. To allow one group of unsecured creditors to recover more than their prepetition debt unfairly discriminates against others because it reduces the pool of assets available to all unsecured creditors pro rata.

For all the above reasons, the court agrees with the majority of courts and will disallow postpetition attorneys' fees in the claims.

### Conclusion

The court denies Tanglewood's Motion for Summary Judgment on the ground that there remain significant material issues of fact in dispute concerning the extent to which Tanglewood's claims will be allowed and the reasonableness of the claims.

Based on the abandonment of the contribution demand by Tanglewood and the requirements of § 502(e)(1)(B) of the Bankruptcy Code, the court sustains the objection of Debtors to that portion of the claims seeking contribution from the Debtors to Tanglewood on contingent claims.

The Debtors defaulted on their obligation to defend Tanglewood in the Mendez Suit against damages arising under ¶ 11.2 of the APA and they became liable for reasonable LLS Fees that were incurred prepetition and after the right to indemnification arose. A hearing will be scheduled to determine the extent to which the LLS Fees are reasonable and were incurred prepetition and after the right to indemnification arose. Fees incurred postpetition are disallowed.

An appropriate order will be entered.

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT, SUSTAINING IN PART DEBTORS' OBJECTION TO UNLIQUIDATED CLAIMS OF TANGLEWOOD INVESTMENTS, INC., SCHEDULING HEARING, AND REQUIRING CERTAIN ACTIONS

**AND NOW,** this 13th day of July, 2005, for the reasons expressed in the accompanying Memorandum Opinion, it is

**ORDERED** that Respondent's Motion for Summary Judgment on Objection to Unliquidated Claims of Tanglewood Investments, Inc. is **DENIED;** and it is further

**ORDERED** that Debtors' Objection to Unliquidated Claims of Tanglewood Investments, Inc. is **SUSTAINED IN PART** as to that portion of the proofs of claim seeking contribution from the Debtors to Tanglewood on contingent claims and that

portion of the proofs of claim is **DISAL-LOWED**; and it is further

**ORDERED** that a hearing will be held on **September 22, 2005, at 3:00 p.m.** in Courtroom A, 54th Floor, 600 Grant Street, Pittsburgh, Pennsylvania, to determine the extent to which the LLS fees and expenses are reasonable, were incurred after the right to indemnification arose, and not incurred postpetition; and it is further

**ORDERED** that, **on or before August 13, 2005,** Respondent shall file with the court and serve the United States Trustee, Debtors, all official committees, future claims representatives and their respective counsel, under seal, a fee and expense application in the format approved by the court in its order governing fee applications in this case, together with an unredacted copy of the time or other records of Locke, Liddell & Sapp, LLP upon which Respondent bases its claim for indemnification for the LLS fees and expenses. No party that receives a copy of the fee application and unredacted records of LLS shall use them for any purpose other than objecting, in this contested matter, to the reasonableness or timing of LLS' fees and expenses; and it is further

**ORDERED** that objections to LLS' fee application must be filed with the court and served on the United States Trustee, Debtors, all official committees, future claims representatives and their respective counsel, under seal, **on or before SEPTEMBER 5, 2005.** A reply to objections, limited to 5 pages, may be filed and served **on or before SEPTEMBER 15, 2005;** and it is further

**ORDERED** that any negotiated and agreed upon fee and expense award shall be filed and served on or before **SEPTEMBER 15, 2005.**